UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROSEMARIE ANNE SCOTELLARO,

                                    Plaintiff,

            v.

CAROLYN W. COLVIN,

                                    Defendant.

Case No. 2:13-cv-00696-GMN-PAL

**REPORT OF FINDINGS AND RECCOMENDATION**

(Mot. for Reversal / Remand – Dkt. #18)
(Cross-Mot. to Affirm – Dkt. #24)

This matter involves Plaintiff Rosemarie Anne Scottellaro's request for judicial review of the Commissioner of Social Security, Defendant Carolyn W. Colvin's final decision denying her claim for social security benefits under Title II of the Social Security Act (the "Act").

## BACKGROUND

On August 26, 2009, Plaintiff filed her application for disability benefits, alleging that she became disabled on July 20, 2007.  AR[1] 134–40.  The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration.  AR 58–71.  An administrative law judge ("ALJ") held a hearing on March 29, 2012. AR 34–57.  In a decision dated April 24, 2012, the ALJ found that Plaintiff was not disabled.  AR 13–26.  Plaintiff requested that the Appeals council review the ALJ's decision.  AR 8–9.  The ALJ's decision became the Commissioner's final decision when the Appeals Counsel denied review on February 28, 2013.  AR 2–6.

Plaintiff filed an Application to Proceed *In Forma Pauperis* (Dkt. #1) on April 24, 2013.  The Court granted Plaintiff's Application and screened the Complaint (Dkt. #4) pursuant to 28 U.S.C. § 1915.  *See* Order (Dkt. #3).  The Commissioner filed an Answer (Dkt. #13), along with

---

[1]  AR refers to the Administrative Record, which was delivered to the undersigned upon the Commissioner's filing of her Answer (Dkt. #13) September 17, 2013.

1

a certified copy of the administrative record, on September 17, 2013. Plaintiff filed a Motion for Reversal and/or Remand (Dkt. #18) on January 17, 2014. The Commissioner filed a Response and Cross-Motion to Affirm (Dkt. ##24–25) on March 20, 2014. The Court has considered the Motion to Remand and the Response and Cross-Motion.

## DISCUSSION

**I.    APPLICABLE LAW**

### A.    Judicial Review of a Disability Determination

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). The statute provides that after the Commissioner has held a hearing and rendered a final decision, a disability claimant may seek review of that decision by filing a civil lawsuit in a federal district court in the judicial district where the disability claimant lives. 42 U.S.C. § 405(g). The statute also provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). But the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence'." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

1    Under the substantial evidence test, a court must uphold the Commissioner's findings if

2  they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec.*

3  *Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003).  When the evidence will support more than one

4  rational interpretation, a court must defer to the Commissioner's interpretation.  *Burch v.*

5  *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Consequently, the issue before a court is not

6  whether the Commissioner could reasonably have reached a different conclusion, but whether

7  the final decision is supported by substantial evidence.

8    It is incumbent upon an ALJ to make specific findings so that a court does not speculate

9  as to the basis of the findings when determining if the Commissioner's decision is supported by

10 substantial evidence.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).  Mere cursory

11 findings of fact without explicit statements about what portions of the evidence were accepted or

12 rejected are not sufficient.  *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).  An ALJ's

13 findings should be comprehensive, analytical, and include a statement explaining the "factual

14 foundations on which the ultimate factual conclusions are based."  *Id. See also Vincent v.*

15 *Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (an ALJ need not discuss all the evidence in

16 the record, but must explain why significant probative evidence has been rejected).

17    **B.    Disability Evaluation Process**

18    A claimant has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179,

19 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in

20 any substantial gainful activity by reason of any medically determinable physical or mental

21 impairment which can be expected . . . to last for a continuous period of not less than 12

22 months."  42 U.S.C. § 423(d)(1)(A).  A claimant must provide specific medical evidence to

23 support his or her claim of disability.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  If a

24 claimant establishes an inability to perform his or her prior work, the burden shifts to the

25 Commissioner to show that the claimant can perform other substantial gainful work that exists in

26 the national economy.  *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (noting that a

27 claimant bears the burden of proof until the final step in the evaluation process).

28

3

## II.   THE ALJ'S DECISION

An ALJ follows a five-step sequential evaluation process in determining whether an claimant is disabled.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If at any step an ALJ makes a finding of disability or non-disability, no further evaluation is required. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Here, the ALJ followed the five-step sequential evaluation process and issued an unfavorable decision on April 24, 2012 (the "Decision").  AR 13–26.

### A.   Step One

The first step of the disability evaluation requires an ALJ to determine whether the claimant is currently engaging in substantial gainful activity ("SGA").   20 C.F.R. §§ 404.1520(b), 416.920(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit.  20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b).  If the claimant is currently engaging in SGA, then a finding of not disabled is made.  If he is not engaging in SGA, then the analysis proceeds to the second step.

At step one in the Decision, the ALJ found that Plaintiff had not engaged in SGA since July 20, 2007, the alleged onset date.  AR 15.  Given Plaintiff's lack of SGA, the ALJ's analysis proceeded to the second step.

### B.   Step Two

The second step of the disability evaluation addresses whether a claimant has a medically-determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, 96-4p.[2]  If a claimant does not have a

---

[2] SSRs are the SSA's official interpretations of the Act and its regulations.  *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to

4

severe medically-determinable impairment or combination of impairments, then an ALJ will make a finding that a claimant is not disabled. If a claimant has a severe medically-determinable impairment or combination of impairments, then an ALJ's analysis proceeds to the third step.

At step two in the Decision, the ALJ found that Plaintiff had the following severe impairments: (i) fibromyalgia, (ii) a back disorder, and (iii) arthritis. AR 15–16. To reach this conclusion, the ALJ relied upon the treatment records of Walter M. Kidwell, M.D. (*see e.g.*, AR 310, 314), Nabila Aslam, M.D. (*see e.g.*, 352–53), and Burhan Chinikhanwala, M.D. (*see e.g.*, AR 460–61). Although Plaintiff testified that she might have lupus during the March 29, 2012 hearing, Plaintiff's report was inconsistent with the results of laboratory studies and the ALJ concluded there was "insufficient evidence to find that the possibility of lupus [was] a severe impairment. AR 15–16, *see also* AR 548. The ALJ's analysis continued to the next step based on his finding that Plaintiff's fibromyalgia, a back disorder, and arthritis were severe impairments.

### 1.    Plaintiff's Non-Severe Mental Impairment: Adjustment Disorder

In making his findings at step two in the Decision, the ALJ specifically considered all of Plaintiff's medically determinable impairments, including one non-severe mental impairment. AR 16. When the SSA evaluates the severity of mental impairments, 20 C.F.R. § 404.1520a requires the use of a "special technique" to evaluate four broad functional areas known as the "Paragraph B Criteria" in Listing 12.00C of the Listing of Impairments set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* *See also* 20 C.F.R. § 1520a (explaining the psychiatric review technique); SSR 96-8p (noting that application of the technique is documented on a Psychiatric Review Technique Form).

The ALJ determined that Plaintiff had a non-severe mental impairment: adjustment disorder. AR 16. In doing so, he specifically evaluated the Paragraph B Criteria and concluded that the greater weight of the evidence showed Plaintiff suffered: (i) mild limitation in activities of daily living; (ii) mild limitation in social functioning; (iii) mild limitations in concentration,

some deference as long as they are consistent with the Act and regulations. *See Bray*, 554 F. 3d at 1223 (finding ALJ erred in disregarding SSR 85-41).

persistence, or pace; and (iv) no episodes of decompensation that have been of extended duration.  AR 16–18.  *See also* AR 446–59 (Psychiatric Review Technique Form completed by Adrianne Gallucci, Psy.D.).  The ALJ based his conclusion on his findings that Plaintiff was able to perform all activities of daily living, including cooking, cleaning, showering, getting dressed, and doing housework, although she sometimes took breaks due to her fibromyalgia or back pain.  AR 16.  He

///

also noted that Plaintiff was able to maintain social relationships with friends and there were no episodes of decompensation of extended duration.  AR 16–18.

To reach the determination that Plaintiff's adjustment disorder was non-severe, the ALJ discussed at length the Paragraph B Criteria in conjunction with the findings of consultative examiners, Heather M. Nash, Ph.D. (*see e.g.*, AR 438–43) and Doris Javine, Ph.D. (*see e.g.*, AR 512–15), both of whom are licensed psychologists who completed psychological evaluations of Plaintiff.  AR 16–17.  After a series of cognitive tests were administered to Plaintiff, Dr. Nash's January 2010 report opined that Plaintiff had no impairments in understanding, attention/concentration, memory, judgment, or verbal cognitive abilities, and exhibited only mild impairment in social and coping skills.  AR 443.  Dr. Javine's conclusions are congruous.  According to Dr. Javine's June 2010 report, Plaintiff used the restroom, showered, and dressed without assistance, did laundry, dusted, used the computer about ten minutes, took case of her dog, read, watched television, talked on the telephone with friends, and managed her own money.  AR 512–15.  Dr. Javine noted "no cognitive problems" and diagnosed Plaintiff with adjustment disorder with mood disturbance.  AR 515.  Drs. Javine and Nash both opined that Plaintiff's current mental health limitations were unlikely to prevent her from sustaining gainful employment for the next 12 months.  AR 517, 443.  As a result of these evaluations, the ALJ concluded that Plaintiff's medically determinable mental impairment—adjustment disorder— "causes no more than 'mild' limitation" in Plaintiff's ability to perform basic mental work

activities.  AR 18.  Thus, her adjustment disorder "is non-severe."  *Id.*[3]  The ALJ also noted that his analysis of Plaintiff's residual functional capacity ("RFC") "reflects the degree of limitation [he] found in the 'paragraph B' mental function analysis."  *Id*.

To summarize his findings at step two, the ALJ found Plaintiff had three severe impairments: (i) fibromyalgia, (ii) a back disorder, and (iii) arthritis, AR 15, as well as one non-severe impairment: adjustment disorder.  AR 18.  Because Plaintiff had three severe medically-determinable impairments, the ALJ's analysis proceeded to the third step.

### C.   Step Three

Step three of the disability evaluation requires an ALJ to determine whether a claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is commonly referred to as the "Listings."  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826.  If a claimant's impairment or combination of impairments meet or equal the criteria of the Listings and meet the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then an ALJ makes a finding of disability.  20 C.F.R. §§ 404.1520(h), 416.920(h).  If a claimant's impairment or combination of impairments does not meet or equal the criteria of the Listings or meet the duration requirement, then the analysis proceeds to the next step.

At step three in the Decision, the ALJ found that no treating or examining physician stated findings equivalent in severity to the criteria of any listed impairment.  AR 18.  Thus, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the impairments described in the Listings.  *Id*.  As such, the ALJ's analysis continued to Plaintiff's RFC.

### D.   Step Four – Plaintiff's RFC

The fourth step of the disability evaluation requires an ALJ to determine whether a claimant has the RFC to perform his past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f).  To answer this question, an ALJ must first determine a claimant's RFC.  20 C.F.R.

---

[3] Plaintiff does not contest the ALJ's determination that her adjustment disorder is non-severe causing only mild mental limitations.  Neither does Plaintiff contend that the ALJ afforded an incorrect amount of weight to any medical or psychological report.

§§ 404.1520(e), 416.920(e).  RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p.  In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529, 416.929; SSRs 96-4p, 96-7p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record.  An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, and 06-3p.

After considering the entire record, the ALJ concluded that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).  AR 18.  In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence." *Id*.  He also considered opinion evidence. *Id*.  Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC Assessment.  AR 20; *see also* AR 430–37 (Physical RFC Assessment).

For example, Plaintiff's testified at the hearing that she has experienced lower back pain on a daily basis since December 2003.  AR 20, 42.  However, in her May 2006 and February 2007 treatment records, Plaintiff denied any history of arthritic symptoms or back problems during medical evaluations.  AR 20, 297, 300–01.  Dr. Kidwell, a pain management specialist, noted that Plaintiff was pain free several days after each treatment by a neuromuscular therapist.  AR 20, 314.  Between September 2010 and September 2011, Plaintiff told multiple doctors that she was discontinuing use of pain and anxiety medication, which included Wellbutrin and

Lyrica.  AR 543, 573.  Plaintiff's September 2011 progress notes also indicated no significant arthritic or neurological symptoms.  AR 541.

In addition, a February 2008 functional capacity evaluation by Plaintiff's physical therapist, B. Montgomery, P.T., suggests that Plaintiff's pain and disability reports were of questionable reliability.  AR 22.  When tested with the Waddell Inappropriate Symptoms Questionnaire to gauge the reliability of her subjective reports of pain and limitation, Plaintiff "presented with 4 of 7 inappropriate (anatomically unreasonable) responses," which was "suggestive of inappropriate illness behavior."  AR 288.  Further, the report noted that Plaintiff's testing of grip strength suggested a lack of full effort.  AR 285–87.  Plaintiff scored a 66% on the Oswestry Low Back Disability Questionnaire "indicating that she is crippled, but the only physical discomfort she demonstrated during the intake interview process was shifting in her chair."  AR 22; *see also* AR 289.

These findings of questionable reliability were echoed in the consultative examination report of Darren Jenkins, D.O., and the RFC Assessment of Robert Quinones, D.O., a state agency medical evaluator/consultant.  AR 23–24.  Despite Plaintiff's complaints of pain, she reported that she was "able to perform all activities of daily living," including cooking, cleaning, showering, and the like, with only minor accommodations such as breaks and changing positions.  AR 426.  Dr. Jenkins observed "no motor strength abnormalities," yet Plaintiff gave "very insincere effort" on the motor strength testing.  AR 428.  Based on the lack of objective findings, Dr. Jenkins opined that Plaintiff's conditions would not impose any limitations for 12 continuous months.  *Id*.  After reviewing Dr. Jenkins' findings and considering the Plaintiff's overall condition, Dr. Quinones opined that certain minor limitations were reasonable.  AR 430–37; *see also* AR 24.

Based on his function-by-function analysis of Plaintiff's physical and mental limitations throughout the Decision, the ALJ found that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).  AR 25.  In explaining how he reached this RFC determination, the ALJ noted the weight he afforded the multiple providers.  The ALJ gave the opinions of Drs. Nash, Javine, Jenkins, Quinones substantial weight as they were consistent

with each other and the record as a whole.  Therefore, considering the medical evidence—clinical signs, diagnostic examinations, medical opinions, and evidence of Plaintiff's functional capacity —in its entirety, the ALJ concluded that Plaintiff failed to meet her burden of proving disability.  *Id.*

### E.    Step Four – Plaintiff's Ability to Perform her PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform his PRW.  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work performed either as a claimant actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established.  In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965.  If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

At step four in the Decision, the ALJ concluded that Plaintiff is capable of performing her PRW as an administrative assistant.  AR 25.  Plaintiff's PRW as an administrative assistant is performed at a sedentary level of exertion.  *Id.*[4]  After comparing Plaintiff's RFC with the physical and mental demands of her PRW, the ALJ found that Plaintiff is able to perform her PRW as it is generally performed.  *Id.*  As a result, the ALJ found that Plaintiff is not disabled.

### F.    Step Five

Step five of the disability evaluation requires an ALJ to determine whether a claimant is able to do any other work considering his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If he or she can do other work, then an ALJ makes a finding that a claimant is not disabled.  Although a claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do.

---

[4]   The Dictionary of Occupational Titles (DOT) describes Plaintiff's PRW as an administrative assistant at No. 169.167-010.  AR 25.

1    *Yuckert*, 482 U.S. at 141–42; *see also Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (citing

2    42 U.S.C. § 423(d)(2)(A)).

3        Because the ALJ found Plaintiff is able to perform her PRW, the ALJ further determined

4    that she has not been disabled from July 20, 2007 through the date of the Decision.  AR 25.  As

5    such, there was no need for the analysis to proceed to the fifth step.

6    **III.    THE PARTIES' POSITIONS ON APPEAL**

7        Plaintiff seeks reversal and remand of the ALJ's decision on the grounds that the ALJ

8    failed to properly assess Plaintiff's RFC and, therefore, failed to propound a hypothetical to the

9    vocational expert.  Motion (Dkt. #18) at 3.  Plaintiff argues that the ALJ did not consider all of

10   Plaintiff's medically determinable impairments as required by 20 C.F.R. § 404.1545 when

11   assessing her RFC.  An ALJ must take the degree of functional loss the non-severe impairment

12   imposes—summarized in the Psychiatric Review Technique Form at step two—and provide a

13   "*more detailed* assessment by itemizing various functions."   SSR 96-8p (emphasis added).

14   Plaintiff asserts that the ALJ failed to provide the detailed assessment and this failure to

15   "incorporate the mental limitations" in her RFC is reversible error.  Motion (Dkt. #18) at 6.

16       Plaintiff contends this error is material given the skilled nature of Plaintiff's PRW as an

17   administrative assistant.   Even a mild limitation in social functioning and concentration,

18   persistence, and pace would impact Plaintiff's ability to do her PRW of interacting with

19   supervisors, co-workers, and the public and making judgments and decisions.  In support of her

20   argument, Plaintiff relies on an unpublished Ninth Circuit decision in *Hutton v. Astrue*, 491 Fed.

21   Appx. 850 (9th Cir. 2012),[5] where the court reversed because the ALJ failed to consider the

22   claimant's mild post-traumatic stress disorder ("PTSD").

23       The Commissioner seeks affirmance of the ALJ's Decision asserting that the ALJ

24   properly assessed Plaintiff's RFC, including a detailed assessment of her mild mental limitations,

25   and determined that Plaintiff's is not disabled.  Response & Cross-Motion (Dkt. ##24–25).  The

26   Commissioner maintains that affirmance is warranted because the ALJ did consider Plaintiff's

27   non-severe mental impairment along with the physical and mental demands of her PRW when he

28
_____
[5] *Hutton* is an unpublished decision that is not binding precedent on this Court.  *See* Fed. R. App. P. 32.1.

determined Plaintiff's RFC and found that Plaintiff is able to perform her PRW.   The Commissioner calls Plaintiff's arguments "disingenuous" because Plaintiff does not challenge the ALJ's determination that her mental condition is non-severe.   The Commissioner argues, as a matter of common sense, that Plaintiff's mild mental limitations would not impede her ability to perform her PRW when they were so mild that they would have been rejected as non-severe standing alone.

Further, the Commissioner contends that Plaintiff misunderstands the use of the psychiatric review technique described at 20 C.F.R. § 404.1520a and SSR 96-8P.   The purpose of the technique is to determine the severity of a claimant's mental impairment and the degree of limitation and restriction based upon the Paragraph B Criteria—the same criteria used to in the RFC assessment.   By giving a detailed analysis of the Paragraph B Criteria in the Decision, the ALJ properly rated the degree of functional limitation and concluded that Plaintiff's non-severe mental impairment did not impose limitations that would prevent her from performing her PRW. *See, e.g.*, *Hoopai v. Astrue*, 499 F.3d 1071, 1078 (9th Cir. 2007) (rejecting claimant's contention that the ALJ erred by not issuing specific findings regarding a mental impairment because the ALJ rated and assessed claimant's limitations in each of the four functional areas).   In addition, the Commissioner points out that *Hutton* is not binding precedent nor on point because the ALJ in that case specifically excluded the claimant's non-severe PTSD from the RFC analysis after making an adverse credibility finding.

## ANALYSIS AND FINDINGS

Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported by substantial evidence, and the ALJ did not commit legal error.

### I. THE ALJ INCLUDED PLAINTIFF'S MENTAL LIMITATION IN HER RFC ASSESSMENT

Relying on *Hutton*, Plaintiff asserts that the ALJ should have included her non-severe mental impairment in the RFC analysis but failed to do so.   In essence, Plaintiff contends that the ALJ failed to consider her mild mental limitations in the RFC analysis because, when

1    determining her RFC at step four, the ALJ did not restate and expand upon the findings he made

2    at step two in the Decision as to Plaintiff's Paragraph B criteria.

3         In *Hutton*, the ALJ determined at step two that the claimant's PTSD existed but was non-

4    severe, causing some "mild" limitations in the areas of concentration, persistence, or pace.  491

5    Fed. Appx. at 850.  At step four, the ALJ discredited the treating physicians' opinions and the

6    Veterans Administration's disability rating, mischaracterized the testimony of the claimant's

7    wife, and found that the claimant's testimony lacked credibility.  *Id.*  As a result, the ALJ found

8    the claimant's PTSD claims were "in great doubt" and excluded the claimant's mild limitations

9    from PTSD when considering the claimant's RFC.  *Id.*  The Ninth Circuit held that the express

10   exclusion of the claimant's non-severe PTSD limitations from the RFC analysis was legal error.

11   Although the ALJ was free to reject the claimant's testimony as not credible, the ALJ could not

12   disregard his own finding that the claimant's non-severe PTSD caused some mild limitations in

13   considering the claimant's RFC.  *Id.* at 851.

14        *Hutton* is inapposite here because the ALJ's Decision demonstrates that he considered

15   Plaintiff's non-severe mental impairment in her RFC.  He did so by providing a thorough

16   analysis of the psychological evaluations of Drs. Nash and Javine, AR 16–18. He gave their

17   opinions substantial weight, AR 25.  *See e.g.*, *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174

18   (9th Cir. 2008) (an RFC assessment adequately captures restrictions in broad functional areas if

19   it is consistent with the limitations identified in the medical opinions).  The ALJ considered the

20   psychologists' diagnosis—an adjustment disorder—and he agreed with their opinions that

21   Plaintiff's mental impairment does not cause more than minimal limitation in her ability to

22   perform basic mental work activities.  AR 16.  The ALJ then analyzed in detail the Paragraph B

23   Criteria used to evaluate and determine both the severity of an impairment and the degree of

24   limitation and restriction in the RFC.  AR 16–18.  Additionally, the ALJ discussed Plaintiff's

25   testimony regarding her mental limitations, AR 19–20, but found her "statements concerning the

26   intensity, persistence and limiting effects of these symptoms are not credible."  AR 20.

27        Although the ALJ did not extensively discuss Plaintiff's mental impairment at step four,

28   he thoroughly discussed the evidence supporting his findings at step two and incorporated them

13

by reference in his RFC analysis.  In particular, the ALJ specifically noted at the conclusion of his step two analysis that his RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." AR 18.  That he did not discuss his findings on the Paragraph B criteria at length at step four is not reversible error.  An ALJ is required to discuss and evaluate evidence that supports his conclusion; he is not required to do so under any specific heading.  *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Lewis v. Apfel*, 236 F.3d 503. 513 (9th Cir. 2001)); *cf. Evenhus v. Astrue*, 815 F. Supp. 2d 1154, 1159–60 (D. Or. 2011) (finding that ALJ's detailed analysis of Paragraph B criteria at step two was sufficient to show that the ALJ adequately considered whether a claimant's impairments would meet the Listings' criteria at step three).  Thus, the Court finds that the ALJ considered Plaintiff's mild mental limitation in his RFC analysis.

## II.  THE ALJ MADE DETAILED FINDINGS RELATED TO PLAINTIFF'S PARAGRAPH B CRITERIA AS REQUIRED

Plaintiff relies upon 20 C.F.R. § 404.1520a and SSR 96-8p describing the psychiatric review technique to argue the ALJ erred in determining Plaintiff's RFC because the ALJ did not provide a more detailed assessment of her mental limitations at step four than he did at step two.[6] This argument is fatally flawed.  The regulations require use of the Psychiatric Review Technique Form (the "Form") to document application of the technique and rate a claimant's degree of functional limitation in four broad functional areas—the Paragraph B Criteria.  The Form is a merely a "checklist" summarizing the findings related to Paragraph B Criteria.  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (citing Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,757–58 (Aug. 21, 2000)).  The regulations require that an ALJ's written decisions include "a 'narrative rationale', instead of the 'checklist of ... conclusions' found in [the Form]."  *Id.*  Thus, the requirement of a "*more detailed* assessment" in Plaintiff's RFC analysis was satisfied when the

---

[6] Plaintiff also argues the ALJ erred by failing to include Plaintiff's mental limitations in a hypothetical to the vocational expert. Although the Decision indicates that a vocational expert attended the administrative hearing, he did not testify. AR 34–57.  Therefore, this argument is without merit.

14

ALJ provided a narrative explanation of his findings rather than simply incorporating the checklist of Paragraph B Criteria "*summarized* on the [Form]."  SSR 96-8p (emphasis added).

Contrary to Plaintiff's argument, "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (affirming decision where, in making a RFC determination, the ALJ took into account the limitations for which there was record support that did not depend on subjective complaints); *cf. Hoopai v. Astrue*, 499 F.3d 1071, 1078 (9th Cir. 2007) (rejecting contention that ALJ erred by not issuing additional, specific findings and holding that "ALJ clearly met the requirements" by rating and assessing the limitations in each functional area).  Here, the Decision included a specific finding regarding the degree of limitation in each of the functional areas.  *See* AR 16–18.  The ALJ rejected Plaintiff's subjective complaints regarding her mental limitations as not credible and unsupported by the medical evidence.  AR 20.  Plaintiff's argument therefore fails because it was unnecessary for the ALJ to go through each functional limitation any more specific detail.  Accordingly, the ALJ did not err in documenting his assessment of Plaintiff's RFC.[7]

## III.   THE ALJ PROPERLY DETERMINED THAT PLAINTIFF COULD PERFORM HER PRW AS AN ADMINISTRATIVE ASSISTANT

Lastly, the ALJ properly concluded that Plaintiff could perform her PRW as an administrative assistant after thoroughly examining the medical evidence of record at step four.  AR 18–25.  The ALJ's extensive discussion of the medical evidence read in conjunction with his findings at step two makes it clear that he adequately reviewed Plaintiff's RFC and the physical and mental demands of the work she previously performed.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  Plaintiff does not contest the

---

[7]  The Court acknowledges that the five-step evaluation process is a sequential inquiry evaluated in a "in a set order."  *See* 20 C.F.R. § 416.920.  To the extent the ALJ evaluated Plaintiff's disability claim outside of the set order, the Court finds this was harmless error and "inconsequential to the ultimate nondisability determination."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (refusing to disturb an ALJ's decision, regardless of error, "[s]o long as there remains substantial evidence supporting the ALJ's conclusions ... and the error does not negate the validity of the ALJ's ultimate ... conclusion." (internal quote omitted).

1    ALJ's finding that Plaintiff's mental impairments were non-severe—a finding that by definition

2    means that Plaintiff's mental impairments do not have more than a minimal limitation on

3    Plaintiff's ability to do basic work activities.  *See* 20 C.F.R. § 416.920a(d)(1).  This translates

4    into no functional limitations in most cases.  As the ALJ observed, Plaintiff's medical records

5    show that her mental impairment "does not cause more than minimal limitation in [Plaintiff's]

6    ability to perform basic mental work activities."  AR 16.  The record supports this finding.  In

7    contrast, Plaintiff's assertion that she is not able to interact or engage with supervisors, co-

8    workers, or the public is unsupported by any citation to the record or any case law.  The ALJ

9    determined Plaintiff had the RFC to perform a full range of light work, and he found that she

10   could perform such work as it is customarily performed and as she actually performed it, and this

11   RFC finding specifically incorporated Plaintiff's mild limitations in mental functioning.  AR 18.

12   Accordingly, the Court finds that the ALJ properly determined that Plaintiff could perform her

13   PRW as an administrative assistant.

14                                              **CONCLUSION**

15          Judicial review of a decision to deny disability benefits is limited to determining whether

16   the decision is based on substantial evidence reviewing the administrative record as a whole.  It

17   is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record

18   as a whole, and resolve conflicts in the evidence and differences of opinion.  Having reviewed

19   the Administrative Record as a whole, and weighing the evidence that supports and detracts from

20   the Commissioner's conclusion, the Court finds that the ALJ's decision is supported by

21   substantial evidence under 42 U.S.C. § 405(g).  For the foregoing reasons,

22          **IT IS RECOMMENDED:**

23          1.      Plaintiff's Motion for Reversal and/or Remand (Dkt. #18) be DENIED.

24          2.      The Commissioner's Cross-Motion to Affirm (Dkt. ##24–25) be GRANTED.

25   / / /

26   / / /

27   / / /

28   / / /

3.     The Clerk of Court be instructed to enter judgment accordingly and close this case.

Dated this 22nd day of June, 2015.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE